UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOAR'S HEAD CORPORATION d/b/a PUBLIC SAFETY NETWORK,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTAPPS, INC. d/b/a DIRECT TECHNOLOGY and FRED J. MICHANIE,<br><br>Defendants. | No. 2:14-cv-01927-KJM-KJN<br><br><br>ORDER |

This matter is before the court on defendants' amended motion to dismiss plaintiff's complaint. Defs.' Mot, ECF No. 12. Plaintiff opposes the motion. ECF No. 13. The court held a hearing on the matter on November 21, 2014. Benjamin Wang appeared for plaintiff and Manuel de la Cerra appeared for defendants. At hearing, the court directed the parties to identify analogous cases addressing eligibility in the context of a motion to dismiss in the wake of the Supreme Court's decision in *Alice Corp. Pty. v. CLS Bank Int'l*, __ U.S. __, 134 S. Ct. 2347 (2014). The parties have identified several cases, in a series of supplemental filings, all of which the court has carefully considered, along with the briefing and arguments of counsel. *See* ECF Nos. 20, 21, 24, 26, 28, 29, 31, 32, 35, 36, 38, 39. As explained below, the court GRANTS defendants' motion.

/////

I.      INTRODUCTION AND PROCEDURAL BACKGROUND

The claims in this case arise out of the alleged infringement of United States Patent No. 8,447,263 ("'263 Patent" or "Patent") by DirectApps, Inc. d/b/a Direct Technology, Inc. and Fred J. Michanie (together, "defendants"). *See generally* Compl., ECF No. 1. Plaintiff Boar's Head Corporation d/b/a Public Safety Network ("plaintiff" or "PSN") is the owner by assignment of the Patent, titled the "Emergency Call Analysis System." *Id.* ¶ 23 & Ex. A.

Plaintiff is a Nevada corporation with its principal place of business in Sacramento, California. *Id.* ¶ 2. Defendant DirectApps is a Delaware corporation with its principal place of business in Roseville, California. *Id.* ¶ 3. Defendant Michanie is the founder and president of DirectApps. *Id.* ¶ 4. Plaintiff creates emergency notification and call analyses systems for government agencies and the public. *Id.* ¶¶ 8–9. Plaintiff owns several patents and pending patent applications related to emergency notification and calls, including the '263 Patent. *Id.* The '263 Patent covers a Dashboard System, which receives emergency call information such as a 911 call, performs statistical analyses of the calls received, and displays the results of the analyses in a customizable, visual way, organized by geography, type of call, and such. *Id.* at 2. Plaintiff's personnel conceived of the system and applied for a patent covering it on January 28, 2011, and the United States Patent and Trademark Office (USPTO) issued the patent on May 21, 2013. *Id.* ¶ 9.

Defendant DirectApps is a consulting company offering various computer related products and services for emergency notification. *Id.* ¶ 13. One of defendant's products is the Emergency Call Tracking System ("ECaTS"). *Id.*

In or about 2012, plaintiff entered into discussions with the United States Department of Homeland Security (DHS) regarding the Dashboard System and its potential for a pilot/demonstration phase. *Id.* ¶ 11. Plaintiff made approximately six presentations to DHS about the system in 2012 and 2013. *Id.* ¶ 10.

In or about October 2013, plaintiff and defendants began discussing potential collaborations to provide complementary products and services to clients such as DHS. *Id.* ¶ 14. These discussions continued until approximately March 2014. *Id.* As part of these conversations,

1   plaintiff disclosed its Dashboard System to defendants. *Id*.  Plaintiff alleges that in late 2013
2   through the first half of 2014, defendants, without involving plaintiff, sought a contract with DHS
3   "to provide the same products and services relating to emergency call analysis. . . ." *Id*. ¶ 17.
4           Plaintiff's complaint claims 1) patent infringement; 2) intentional interference with
5   prospective economic advantage; and 3) unfair competition in violation of California Business
6   and Professions Code section 17200 *et seq*.  Defendants filed the pending amended motion to
7   dismiss, arguing plaintiff's patent is invalid under the Patent Act, 35 U.S.C. § 101.  ECF No. 12.
8   The motion also argues that plaintiff's remaining causes of action are preempted.  *Id*. Plaintiff has
9   filed an opposition, contending the court must engage in claim construction before reaching the
10  question of § 101 validity.  ECF No. 13.  Defendant has filed a reply, ECF No. 15.
11  II.      JUDICIAL NOTICE
12          In their motion, defendants ask the court to take judicial notice of an order issued
13  by a district court in the Central District of California, *CMG Fin. Servs., Inc. v. Pac. Trust Bank,*
14  *F.S.B.*, No. CV 11-10344, 2014 WL 4922349 (C.D. Cal. Aug. 29, 2014), and the patents at issue
15  in that case.  "On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another
16  court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of
17  the opinion, which is not subject to reasonable dispute over its authenticity." *Lee v. City of Los*
18  *Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (internal quotations omitted).  A court may take
19  judicial notice of another court's decision as a fact not reasonably subject to dispute under Federal
20  Rule of Evidence 201(b); the court does not necessarily adopt the legal reasoning contained
21  within any of the documents, "but rather [notices] the fact that the prior orders contain such legal
22  reasoning or came to certain legal conclusions." *Caballero v. Doan*, No. 13-CV-05756, 2014 WL
23  3950899, at *1 (N.D. Cal. Aug. 11, 2014).  The court grants defendants' request for this limited
24  purpose.  The court also takes notice of the existence of the patents discussed in the *CMG* case.
25  III.     LEGAL STANDARD ON MOTION TO DISMISS
26      A.      Generally
27          Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a
28  complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss

"based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

B.  Patent Cases

The question raised by defendants' motion, whether a claim recites patent-eligible subject matter, is a question of law.  *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1369 (Fed. Cir. 2011). Defendants' burden in seeking to dismiss plaintiff's claims based on patent ineligibility is high

/////

/////

4

because of the Patent's presumptive validity.[1] *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1304 (Fed. Cir.), *aff'd*, __ U.S. __, 134 S. Ct. 2347 (2014).

Section 101 of the Patent Act sets forth the standard for what is patent-eligible subject matter. 35 U.S.C. § 101. As the Federal Circuit has observed, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012), *cert. denied*, ___ U.S. ___,134 S. Ct. 2870 (2014). Claim construction itself "is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of claims annexed to them." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). Notwithstanding the ordinary desirability of claim construction, it is not always required to resolve a motion based on § 101 eligibility. *See, e.g., Bancorp Servs. L.L.C.*, 687 F.3d at 1273 ("no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under [Section] 101"); *see also CyberFone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x 988, 992 n.1 (Fed. Cir. 2014) ("There is no requirement that the district court engage in claim construction before deciding [Section] 101 eligibility.").

The Supreme Court's recent decision in *Alice*, *supra,* while not addressing claim construction directly, has affected courts' thinking about claim construction. In *Alice*, the Court clarified that a claim directed to an abstract idea is not eligible for patent protection when it "merely requires generic computer implementation" or "attempt[s] to limit the use of [the idea] to a particular technological environment." 134 S.Ct. at 2357. As one court subsequently has observed, "*Alice* . . . categorically establish[ed] a clear rule that had been previously subject to

---

[1] While this presumption has been called into question recently, *see Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720 (Fed. Cir. 2014) (Mayer, J., concur.) ("[b]ecause the PTO has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101"), the Supreme Court's decision in *Alice, supra*, reaffirms the presumption while clarifying the potential rebuttability of that presumption with respect to patents that rely on computer implementation.

5

debate: 'mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.'" *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* No. 1:10CV910, 2014 WL 5430956 (E.D. Va. Oct. 24, 2014); *see also Eclipse IP LLC v. McKinley Equipment Corp.*, No, SACV 14–742, 2014 WL 4407592, at *3 (C.D. Cal. Sept. 4, 2014) (finding the same "clear rule"); *but see California Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F. Supp. 3d 974, 984 (C.D. Cal. 2014) ("Yet *Alice* did not answer the bigger questions, only incrementally clarifying § 101 . . . *Alice* failed to answer this: when, if ever, do computer patents survive § 101?"). Another district court has considered post-*Alice* cases to determine whether instructive themes have emerged in the Federal Circuit's analysis of § 101 eligibility. *See California Inst. of Tech.*, 59 F. Supp. 3d at 991. That court has identified the following themes, which this court finds helpful: 1) the purpose of § 101 is to avoid preemption; 2) computer software and codes remain patentable, but in limited contexts; 3) attempts to patent mathematical formulas are met with skepticism; 4) a claim is likely to be "abstract" if it is similar to a longstanding practice. *Id*.

      Relying on *Alice*, an increasing number of district courts have found claim construction unnecessary when determining the eligibility of patents that rely on computer implementation at the motion to dismiss stage. *See, e.g., Cogent Med., Inc. v. Elsevier Inc.*, No. C-13-4479-RMW, 2014 WL 4966326, at *3 (N.D. Cal. Sept. 30, 2014); *Open Text S.A. v. Alfresco Software Ltd*, No. 13-CV-04843-JD, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) (compiling cases). They have done so when "the basic character of a Section 101 dispute is clear to the district court." *Genetic Technologies Ltd. v. Lab. Corp. of AmericaHoldings*, No. CV 12-1736, 2014 WL 4379587, at *6 (D. Del. Sept. 3, 2014); *see also Cardpool, Inc. v. Plastic Jungle, Inc.*, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (when "the basic character of the claimed subject matter is readily ascertainable from the face of the patent, the [c]ourt finds that it may determine patentability at the motion to dismiss stage"). Claim construction has been found unnecessary when a patent's claims are "straightforward" and "[n]o components are opaque such that claim construction would be necessary to flush out its contours." *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013). Claim construction also may not be warranted when there is only one disputed claim and the remaining claims are clear, as a

court may simply adopt the meaning most favorable to the plaintiff when considering eligibility. *Genetic Technologies Ltd. v. Bristol-Myers Squibb Co.*, 2014 WL 5507637, *8 (D. Del. Oct. 30, 2014) (granting motion to dismiss based on ineligible subject matter).

At the same time, some courts decline to dismiss prior to claim construction if it is possible to read the claims as stated to cover patent-eligible subject matter, or if the parties dispute key terms of a patent. *See Data Distribution Technologies, LLC v. BRER Affiliates, Inc.*, No. CIV. 12-4878, 2014 WL 4162765, at *6 (D.N.J. Aug. 19, 2014) (declining to grant early dismissal where patentee did not offer its own claim construction or concede record was sufficient for court to conduct its own construction, in light of court's recognition of its duty to "adopt the construction of the claims most favorable to the patentee" and defendants' burden to show that "only plausible construction is one that, by clear and convincing evidence, renders the subject matter ineligible (with no factual inquiries)."); *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA CV 14-0347, 2015 WL 1239992, at *9 (C.D. Cal. Mar. 17, 2015) (finding defendants failed to meet burden to show ineligibility because their "argument amounts to a recitation of the elements of each representative claim followed by a conclusory characterization of the claims as 'unlimited,' 'so abstract and sweeping as to cover any and all uses of them,' and 'recit[ing] nothing more than an ineligible concept.'").

IV. DISCUSSION

    A. Claim One: Patent Infringement

        1. Claim Construction/Motion to Dismiss

            a. Parties' Arguments

As noted, defendants argue the Patent is facially invalid under 35 U.S.C. § 101 because it covers ineligible subject matter. Defendants argue the Patent here is analogous to patents courts have found ineligible post-*Alice*, specifically those that simply computerize a human process. They argue the Patent does not meet the prevailing standard for eligibility set forth by the Supreme Court, whereby the Court requires the Patent to "add[] significantly more" to an abstract idea. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, __ U.S. __, 132 S. Ct. 1289, 1289 (2012); *see also Alice*, 134 S. Ct. at 2357 (concluding "merely requir[ing] generic

computer implementation[] fail[s] to transform [an] abstract idea into a patent-eligible invention"). Defendants claim that in the face of their motion plaintiff is obligated to "come forward with [claim] construction, provide the intrinsic evidence and explain how its construction would change the result." Defs.' Mot. at 3.

Plaintiff does not offer its own claim construction but does contend claim construction is required to decide the motion. It says the court must resolve claim construction disputes prior to engaging in a § 101 analysis, Opp'n at 5, and argues claim construction would materially impact the § 101 analysis in the instant case. Plaintiff contends defendants' argument is "premised on its assertion that the claim term 'emergency call analysis system' is merely a 'conventional computer.'" *Id*. at 6. Plaintiff disagrees, saying the intrinsic evidence, namely the documents in the record, shows the system is a "specific type of computer." *Id*. at 7:1–2. Plaintiff asks the court to deny the motion without prejudice so discovery can commence and claim construction may proceed. *Id*. at 5–6.

                b.    Patent Claims

There are 20 claims in the Patent, which runs just over eight pages with eleven figures. Defendants' motion focuses on three independent[2] claims: claims 1, 14, and 18. *See* Defs.' Mot. at 11. Claim 1 sets forth the "receiving, determining, generating" method for "communicating information associated with emergency calls." The emergency call analysis system "transforms the inputted data into a specific type of statistical information, and a computer server generates browser code that is used to display graphical indicia of the specific statistical information." '263 Patent, col.14 ll. 29-50 1.[3] Claims 14 and 18 reiterate the

---

[2] Independent claims contain all the claim limitations in the individual claim and, as the name implies, independently stand on their own with respect to the identification of the claim limitations. *See* 35 U.S.C. § 112; *see also* Fed. Civ. Jury Instr. 7th Cir. 11.2.6 (2010).

[3] Claim 1 states:

> A method for communicating information associated with emergency calls communicated to emergency response centers, the method comprising: receiving, by an emergency call analysis system, emergency call information that defines an emergency call communicated to an emergency response center within a geographic region, wherein the emergency call information

8


"receiving, determining, generating" method and provide more detail as to what type of organization the information is subjected to before its computerized display.[4] The remaining

---

        includes location information of the emergency call; determining, by the emergency call analysis system, statistical information that includes a quantity of emergency calls that originated within a geographic region during a first period, and an average quantity of emergency calls that originated within the geographic region during a second period that is greater than the first period; generating, by a computer server, browser code executable by a browser to cause the browser to display the statistical information via graphical indicia of the quantity of emergency calls originated during the first period, and graphical indicia of the average quantity of emergency calls that originated during the second of period."

Patent, col.14 ll. 29-50.

[4] Claim 14 states:

        A system for communicating information associated with emergency calls communicated to

        emergency response centers, the system comprising: an emergency call analysis system configured to receive emergency call information that defines an emergency call communicated to an emergency response center within a geographic region, wherein the emergency call information includes location information of the emergency call; wherein the emergency call analysis system is further configured to determine statistical information that includes a quantity of emergency calls that originated within a geographic region during a first period, and an average quantity of emergency calls that originated within the geographic region during a second period that is greater than the first period; and a computer server configured to generate browser code executable by a browser to cause the browser to display the statistical information via graphical indicia of the quantity of emergency calls originated during the first period, and graphical indicia of the average quantity of emergency calls that originated during the second of period.

Patent, col. 15-16 ll. 60-15.

    Claim 18 states:

        A non-transitory machine-readable storage medium having stored thereon a computer program comprising at least one code section for communicating information associated with emergency calls communicated to emergency response centers, the at least one code section being executable by a machine for causing the machine to perform acts of: receiving emergency call information that defines an emergency call communicated to an emergency response center within a geographic region, wherein the emergency call information includes location information of the emergency call; determining

9

seventeen claims are dependent claims which reference other claims.[5]  Plaintiff does not dispute this reading of the independent and dependent claims, but opposes defendant's "stripping down, simplifying, generalizing, and paraphrasing the actual claim language to remove all of the concrete limitations."  Opp'n at 10, 15.  The alleged limitations plaintiff points to are that the display of call data happens "in real time" and involves "superimpos[ing] one or more charts over the sub regions of the geographic image."  *Id*.

In considering the eligibility of the Patent, the court looks to the undisputed independent claims as the controlling representative[6] claims.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary" because some claims are representative, "substantially similar and linked to the same abstract idea."); *see also Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *10 & n.3 (C.D. Cal. Oct. 28, 2014) ("The Supreme Court's precedents have not required a court deciding § 101 eligibility to parse each individual claim, instead finding an analysis of representative claims sufficient.").

/////

---

> statistical information that includes a quantity of emergency calls that originated within a geographic region during a first period, and an average quantity of emergency calls that originated within the geographic region during a second period that is greater than the first period; generating browser code executable by a browser to cause the browser to display the statistical information via graphical indicia of the quantity of emergency calls originated during the first period, and graphical indicia of the average quantity of emergency calls that originated during the second of period.

Patent, col.16 ll.51-6.

[5]  Dependent claims contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed. *See* 35 U.S.C. § 112.

[6] A claim is representative when it is determinative and dispositive of the issue before the court.  *In re Am. Acad. Of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).  Because eligibility here turns on whether the independent claims are patent-eligible, those claims are the representative claims.

### c. Claim Construction Required Here?

Since *Alice*, as noted, numerous courts have found patents to cover ineligible subject matter without claim construction when those patents computerize an existing process. *See, e.g., Lab. Corp. of AmericaHoldings*, 2014 WL 4379587; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assoc.*, Nos. 12–2501(MAS)(TJB), 12–6960(MAS)(TJB), 2013 WL 3964909, at *5 (D.N.J. July 31, 2013) (rejecting plaintiff's argument that motion to dismiss on patent eligibility grounds was premature because claim construction had not yet occurred, because "the basic character of the claimed subject matter in dispute . . . is clearly evident to the [c]ourt and no further construction of the claims is required"; evaluating the § 101 issue by giving the relevant claim terms the meaning most favorable to the patentee) (internal quotation marks omitted).

Although it is defendants' burden to show ineligibility, a court should look to the plaintiff to show some factual dispute requiring claim construction. C*yberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. App'x. 988, 992 (Fed. Cir. 2014) (holding patent claim subject matter ineligible under § 101 where district court did not engage in claim construction, and plaintiff "d[id] not explain which terms require construction or how the analysis would change"). In ultimately determining whether claim construction is required, courts have considered, for example, whether there are genuine disputes of fact and if so, whether they are numerous or may be resolved through simply assuming the construction most favorable to plaintiff. *See Lab. Corp. of AmericaHoldings*, 2014 WL 4379587 at *6; *Open Text*, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014) ("[T]his lack of dispute over the proper construction of the asserted claims confirms that it is unnecessary to engage in claim construction before addressing validity under Section 101"). Courts also have considered the extent to which extrinsic facts may be helpful or relevant in construing the claims, and the substance of the parties' arguments. *Eclipse IP LLC*, 2014 WL 4407592, at *6. Whether the parties' arguments rely largely on facts already in the record is also a clue that claim construction is unnecessary. *Morsa v. Facebook, Inc.,* No. SACV 14-161, 2014 WL 7641155 at *5 (C.D. Cal. Dec. 23, 2014).

/////

Courts that have declined to decide Rule 12 motions prior to engaging in claim construction have found there are possible constructions of key claim terms that, if adopted, could render the claims subject matter eligible. *See Data Distribution Techs*, 2014 WL 4162765 at *8, 15. Courts also have denied motions to dismiss where the factual record is not yet sufficiently developed, such that the general character of a patent and its limitations are unclear. *StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, No. 8:13-CV-2240-T-33MAP, 2015 WL 518852, at *4 (M.D. Fla. Feb. 9, 2015). Finally, courts consider the nature of the dispute, whether there are genuine disputes as to the specific limitations of a patent that claim construction would aid, or if the dispute concerns broader questions of the patent's character. *Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*, No. CV 13-1274-SLR, 2014 WL 7215193, at *6 (D. Del. Dec. 18, 2014).

Here, plaintiff identifies several factual disputes it says preclude claim construction. Opp'n at 4-5. These disputes include whether the Patent is preemptive, whether tracking caller data is a longstanding, "well-understood, routine, or conventional" practice that can be performed with a pen and paper, whether only a generic computer is required, or whether the limitations are sufficiently transformative or limiting. *Id*. Although plaintiff presents these issues as "necessary factual predicates," they more closely resemble the questions a court must consider in determining a patent's eligibility, that is, questions of law that many courts have decided without claim construction. *See, e.g., Gametek LLC v. Zynga, Inc.*, No. CV-13-2546 RS, 2014 WL 1665090, at *5 (N.D. Cal. Apr. 25, 2014), *aff'd*, 597 F. App'x 644 (Fed. Cir. 2015) (considering preemption, limitations, and well-understood, routine, and conventional activity and granting the motion to dismiss); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 WL 4364848, at *10 (E.D. Tex. Sept. 3, 2014) (determining, in motion for judgment on pleadings, that alleged process is a computerization of something that can be performed by human without computer aid); *Cogent Med., Inc.*, 2014 WL 4966326, at *4 (determining preemption and sufficiency of alleged limitations in a motion to dismiss); *Wolf v. Capstone Photography, Inc.*, 2014 WL 7639820, at *12 (determining, in a motion to dismiss, whether the claims are sufficiently limited such that patent goes beyond use of generic computer

because it contains other technological components, and conducting a "pen and paper" test); *Essociate, Inc. v. Clickbooth.com, LLC*, No. SACV 13-01886-JVS, 2015 WL 1428919, at *6 (C.D. Cal. Feb. 11, 2015) (determining question of whether patent computerizes longstanding practice and is preemptive on motion for judgment on pleadings).

The only potentially relevant and genuine factual dispute plaintiff raises is whether a merely generic computer can perform the claims of the Patent here. The court finds it can resolve this question on the record before it. The Patent states clearly that "the computer system may operate as a stand-alone device or may be connected, e.g., using a network, to other computer systems or peripheral devices." Patent, col.13 ll. 10–15. The "computer system may also be implemented as or incorporated into various devices, such as a personal computer or a mobile device . . . any kind of computer system or other apparatus adapted for carrying out the methods described herein is suited." *Id*. 60–65. The nature of the Patent can be ascertained from its face: it is a computer system configured to organize and display data that can be used on multiple devices. Drawing all inferences in favor of plaintiff, claim construction would not significantly alter the eligibility analysis. Plaintiff does not suggest that extrinsic evidence would be helpful or is necessary to construct the claims; it relies on facts in the record already before the court. *See* Opp'n at 7 ("The intrinsic evidence shows that an 'emergency call analysis system' is a specific type of computer, as described in the intrinsic record."). The record is not so voluminous or complex such that the court would be aided by claim construction to ascertain the general nature of the Patent or its limitations. *See Data Distribution Technologies, LLC v*, 2014 WL 4162765, at *4 (where the asserted patent contained "30 pages of figures, 12 pages of written description, and 100 claims," claim construction was necessary). Separate claim construction proceedings are therefore not necessary to determine the Patent's eligibility.

d.   Section 101

Section 101 of the Patent Act provides: "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "In choosing such expansive terms modified by the comprehensive

13

'any,' Congress plainly contemplated that the patent laws would be given wide scope." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Notwithstanding the broad scope of § 101, however, there are three judicially-created exceptions to § 101 patent-eligibility: "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 594 (2010).

To determine whether an invention claims "laws of nature, natural phenomena, or abstract ideas" and is therefore patent ineligible, the Supreme Court has established a two-part test. First, a court must determine whether the patent is directed toward an abstract idea. If so, second, the court looks to whether there is an inventive concept that appropriately limits the claim and does not preempt a significant amount of inventive activity. *Mayo,* 132 S. Ct. at 1294. As noted above, in *Alice*, the Supreme Court recently examined the scope of eligibility. "Simply appending conventional steps, specified at a high level of generality," to a method already "well known in the art" is not "enough" to supply the "'inventive concept'" needed to make this transformation. *Alice*, 134 S. Ct. at 2350 (citing *Mayo,* 132 S. Ct. at 1294). In applying the *Mayo* test, the Supreme Court rejected the notion that a program that "simply instructs the practitioner to implement the abstract idea of intermediated settlement on a generic computer" is patent eligible. *Alice,* 134 S. Ct. at 2351.

e. *Mayo* Analysis

Looking to *Mayo* step one, the court must determine whether the Patent is directed to an abstract idea. On its face, the Patent and its representative claims describe a computerized system of tracking and aggregating caller information. This is essentially the abstract idea of organizing phone call data. Several courts have considered whether a general and longstanding human practice such as organizing, interpreting, and aggregating data is abstract. For example, in a similar case, a district court found the computerized performance of cataloguing, maintaining and setting aside particularly relevant information is directed to an abstract idea akin to what librarians and other data organizers have always performed. *See Cogent Med., Inc.,* 2014 WL 4966326, at *4. Here, it is a longstanding practice, one that can be performed by a human, to take account of phone calls, where they might be coming from, and to use that data accordingly. *See also Cardpool*, 2013 WL 245026, at *2 (finding computerized process of activity that would be

14

performed by human abstract); *Essociate, Inc. v. Clickbooth.com, LLC,* No. SACV 13-01886-JVS, 2015 WL 1428919, at *6 (C.D. Cal. Feb. 11, 2015) (idea of receiving and tracking referrals from referral sources is abstract).

Because the court finds the representative claims, claims 1, 14, and 18, are directed to an abstract idea, it turns to *Mayo*'s step two: whether enough inventive concept is added to the claims to render it patent eligible. Many courts use the "machine-or-transformation" ("MOTT") test set forth by the Supreme Court in *Bilski*. *See, e.g., OIP Technologies, Inc. v. Amazon.com, Inc*., 2012 WL 3985118, at *5 (N.D. Cal. Sept. 11, 2012). Under this test, a "claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus; or (2) it transforms a particular article into a different state or thing." *Bilski*, 561 U.S. at 594 (citations omitted). Although the MOTT test is not dispositive, is it useful in determining whether there is a sufficient additive concept to an abstract idea to render it patent-eligible. *See Bancorp*, 687 F.3d at 1278 (holding that the machine-or-transformation test remains an important clue in determining eligibility under § 101).

In examining computerized patents using the MOTT test, the Federal Circuit has held that a machine should not "function solely as an obvious method for permitting a solution to be achieved more quickly, *i.e*., through the utilization of a computer for performing calculations." *Dealertrack*, 674 F.3d at 1333. An invention is patent-ineligible where the "the patent claims do not provide any specifics as to which machine is to be used and/or how that machine is to be programmed to perform the steps claimed in the patents." *Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*, No. CIV-12-360-M, 2012 WL 6629561, at *3 (W.D. Okla. Dec. 19, 2012), *aff'd sub nom. Sinclair-Allison, Inc. v. Fifth Ave. Physician Servs., LLC*, 530 Fed. App'x 939 (Fed. Cir. 2013). As noted above, the Patent here provides that "the computer system may operate as a stand-alone device or may be connected, e.g., using a network, to other computer systems or peripheral devices." '263 Patent, col. 13 ll. 10–15. The "computer system may also be implemented as or incorporated into various devices, such as a personal computer or a mobile device . . . any kind of computer system or other apparatus adapted for carrying out the methods described herein is suited." *Id*. 60–65. Simply automating a conventional process on a computer

15

is patent ineligible. *See Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d 709, 716 (Fed. Cir. 2014*)* (finding program "not tied to any particular novel machine or apparatus, only a general purpose computer" patent ineligible).  Plaintiff offers a purported limitation in its opposition:  that "this is a specific thing done by a specific computer system in specific field, and not a general mathematical formula, algorithm, or mere mental step."  Opp'n at 9.  But "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment," "limiting an abstract idea to one field of use or adding token postsolution components . . . ."  *Bilski*, 561 U.S. at 610–12.  Plaintiff's argument is unpersuasive.

        The Supreme Court's analysis of the patent at issue in *Alice* also is instructive here.  The system claims[7] in *Alice* covered a "'data processing system' with a 'communications controller' and 'data storage unit,'" which are "purely functional and generic" components for "performing the basic calculation, storage, and transmission functions required by the method claims."  *Alice,* 134 S. Ct. at 2360.  The Court rejected the argument that a claim directed to an abstract idea becomes eligible when the patent involves a generic computer, even when performing data storage or processing. *Id*.  Here, the court finds the Patent covers only generic computer implementation of data, and so finds the Patent case ineligible under the "machine" prong of the MOTT test.

        The Patent in this case also does not satisfy the "transformation" standard.  In a case analogous to this one, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc*., a district court considered whether the claims in a patent "purport[] to improve the functioning of the computer itself."  It found the  "computer components of the claims add nothing that is not already present in the steps of the claimed methods, other than the speed and convenience of basic computer functions such as calculation, communication, and the display of information."  2014 WL

---

[7] In *Alice*, the Court considered the "method" and "system" claims separately, finding neither set supplied a sufficient inventive concept to render the patent eligible.  The analysis for system and method patent-eligible subject matter was largely the same.  *See Alice*, 134 S. Ct. at  2360 ("Petitioner's claims to a computer system and a computer-readable medium fail for substantially the same reasons" as its method claims).  Here too, plaintiff's claims involve both a method claim (claim 1) and a system claim (claim 14).

1    4364848, at *9 (E.D. Tex. Sept. 3, 2014) (considering patent purporting to cover computer-driven
2    method and computer program for converting one vendor's loyalty award credits into another
3    vendor's loyalty award credits).
4        In opposition to defendant's motion, plaintiff states the Patent here "transforms the
5    inputted data into a specific type of statistical information, and a computer server generates
6    browser code that is used to display graphical indicia of the specific statistical information."
7    Opp'n at 2.  Considering a different but similar patent, which "compil[ed] data and recycl[ed] it
8    for different purposes" in a computerized system, another sister court found that patent lacking in
9    inventive concept.  *Sinclair–Allison*, 2012 WL 6629561 at *5 (considering a computerized
10   method and system for compiling healthcare professional credentialing information and
11   transferring said information to an application for medical malpractice insurance).  "That a
12   computer receives and sends the information over a network—with no further specification—is
13   not even arguably inventive."  *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1355 (Fed. Cir.
14   2014).  Put simply, "[t]he mere manipulation or reorganization of data [] does not satisfy the
15   transformation prong."  *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1374 (Fed.
16   Cir. 2011).  The court finds the Patent here, like the patents in *Sinclair-Allison* and *buySAFE,*
17   lacks an "inventive concept" sufficient to "transform" the abstract idea into patent-eligible
18   material.
19       While a "plausibly narrowing limitation" would be one that does not rely on an
20   algorithm that can be performed by a human with nothing more than pen and paper, *Card*
21   *Verification Solutions, LLC v. Citigroup Inc*., No. 13 C 6339, 2014 WL 4922524, at *4 (N.D. Ill.
22   Sept. 29, 2014), the limitations plaintiff offers do not meet this standard.  The purported
23   "limitations" of "displaying certain specified information in real time as emergency calls occur"
24   and "superimposing one or more charts" are not limitations, but simply examples of a computer
25   generating data in response to inputted data.  This is what computers have done since their
26   inception, as courts have recognized for years.  *See Gottschalk v. Benson*, 409 U.S. 63, 93 (1972)
27   ("But the computer implementation did not supply the necessary inventive concept; the process
28   could be 'carried out in existing computers long in use.'");  *Content Extraction & Transmission*

1  *LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (no "inventive
2  concept" in use of generic scanner and computer "to perform well-understood, routine, and
3  conventional activities commonly used in industry"); *but see Data Distribution*, 2014 WL
4  4162765, at *6 (D.N.J. Aug. 19, 2014) (declining to reach patent-eligibility of database
5  maintenance and storage for online real estate system for maintaining records, allowing potential
6  buyers to create profiles and conduct searches, and emailing potential buyers about listings before
7  claim construction where construction would assist in comprehending 30 pages of figures, 12
8  pages of written description, and 100 claims, and defendant had not met clear and convincing
9  evidentiary burden).

10   In sum, the court finds no unresolved factual questions requiring claim
11  construction.  The Patent covers ineligible subject matter under § 101.

12  B.  Claims II and III: Tortious Interference with Prospective Economic Advantage and Unfair Competition
13

14   With dismissal of plaintiff's patent infringement claim, only plaintiff's state law
15  claims remain. "We have several times held that when all the federal claims are dismissed early
16  in the proceedings it is an abuse of discretion to exercise supplemental jurisdiction over the
17  remaining state law claims." *Bateman v. Twentieth Century Fox Corp.*, 221 F.3d 1347 (9th Cir.
18  2000); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) ("When . . . the
19  court dismisses the federal claim leaving only state claims for resolution, the court should decline
20  jurisdiction over the state claims and dismiss them without prejudice."). This action was filed in
21  August 2014. The court has not yet held a scheduling conference, opened discovery, or decided
22  any substantive motions before considering this motion to dismiss. Accordingly, the court
23  declines to exercise supplemental jurisdiction over the remaining state law claims. The motion to
24  dismiss the state law claims is GRANTED without prejudice to plaintiff's refiling the claims in
25  state court.
26  /////
27  /////
28  /////

V.      <u>CONCLUSION</u>

        For the foregoing reasons, the court GRANTS defendants' motion to dismiss claim one with prejudice, and claims two and three without prejudice. The scheduling conference set for July 30, 2015 is VACATED.

        IT IS SO ORDERED.

DATED: July 27, 2015.

_____
UNITED STATES DISTRICT JUDGE